Filed 4/21/25  P. v. Walters CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D083672 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS326477) |
| JAMES C. WALTERS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Carlos Varela, Judge.  Affirmed.

Jared G. Coleman, under the appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Monique Myers, Deputy Attorneys General, for Plaintiff and Respondent.

James C. Walters appeals from a judgment sentencing him to three years in state prison after a jury convicted him of driving under the influence

at the San Ysidro border crossing. On appeal, Walters contends the trial court's judgment must be reversed under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) because the trial court failed to conduct an in camera hearing to investigate his allegations of ineffective assistance of counsel. Walters argues that four letters he wrote to the court after the jury's verdict and before sentencing constituted a *Marsden* motion. We conclude that Walters's letters did not clearly indicate he was requesting substitute counsel and thus did not obligate the court to conduct a *Marsden* hearing. Accordingly, we affirm the trial court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*A. Prosecution Evidence*

On April 3, 2023, a United States Customs and Border Protection (CBP) officer contacted Walters while he was driving alone in a car through the San Ysidro Port of Entry. The officer suspected Walters was driving under the influence (DUI) because Walters smelled of alcohol, had glossy eyes, staggered coordination, and exhibited arrogant behavior. The CBP officer requested that California Highway Patrol (CHP) officers respond to investigate further.

Walters performed poorly on several field sobriety tests administered by a CHP officer. His blood alcohol content (BAC) was 0.148 percent according to a preliminary alcohol screening test, and he refused to provide a second sample. The officer obtained a warrant and Walters was required to submit to a blood chemical test.

Using retrograde extrapolation, a San Diego County Sheriff's Regional Crime Laboratory criminalist testified Walters's BAC at the time he was driving would have been between 0.11 percent and 0.21 percent, which is above the legal limit of 0.08 percent. The criminalist opined that someone

2

with a BAC in that range would have been under the influence of alcohol and could not have operated a motor vehicle safely.

### B. Defense Evidence

Walters testified that earlier in the day, he and his friend Arturo went to Tijuana. Arturo did not drink and agreed to drive them both back to the United States. The wait time to enter the United States was about two to three hours long, and eventually Arturo left the car to use the restroom. While Arturo was gone, a CBP officer approached Walters and asked him to move the car forward in line. The officer threatened to tow the car if Walters did not move it, so Walters moved into the driver's seat and drove the car a few lengths to the border checkpoint booth. At the booth, Walters told the CBP officer that his friend was the driver and that he only moved the car because another officer told him to do so. Walters was then pulled out of the car, put in a chokehold, and moved to a secondary area for further inspection.

### C. Verdict and Sentencing

In December 2023, a jury found Walters guilty of driving under the influence of alcohol (Veh. Code, § 23152, subd. (a) (count 1)) and driving while having a measurable blood alcohol (Veh. Code, § 23152, subd. (b) (count 2)). After the verdict, Walters admitted to a prior felony DUI from 2014. Consequently, the trial court found the special allegation under Vehicle Code section 23550.5 true as to both counts. Walters also admitted to a prior prison term.

After being convicted, Walters wrote four letters to the court. Walters's first letter, dated December 23, 2024 and filed January 2, 2024, requested the court to enter a judgment of acquittal. Walters mentioned "need[ing] effective assistance of counsel" and cited *Strickland v. Washington* (1984) 466 U.S. 668 (*Strickland*), but the only relief he requested was a judgment of

3

acquittal. Walters argued "there is no legally sufficient evidentiary basis for a jury to have finding for, I the defendant . . . to be guilty[.]"

In his second letter, post-marked January 8, 2024 and filed January 11, 2024, Walters informed the court of his belief that proper procedures were not followed by a border patrol agent involved in his case. Walters concluded by stating, "I think something is wrong with this case."

In the third letter, dated January 21, 2024 but not post-marked until February 16, 2024, Walters stated that he had asked his attorney to file a "writ" or "appeal" or "acquittal request" but the attorney told him to wait and he did not know why. Walters devoted several pages of this letter to his version of what had happened at the border crossing and complained that he was "receiving no to very little assistance from the public defender office." Walters's sole request in this letter was for the court to subpoena a border agent involved in the case. Walters concluded by stating the case was a "complete setup on the part of the border patrol agent."

In his fourth letter, dated February 15, 2024 and also post-marked February 16, 2024, Walters complained about the lack of communication between himself and his public defender. Walters informed the court about motions and research he had conducted for his case. Walters wrote, "[m]y current attorney seems to be burden [*sic*] with heavy caseload. I am receiving no assistant[.]" Walters also stated, "[m]y attorney though might be a good attorney. However, I am receiving little to no assistance." Walters's sole request in the letter was for "an in court session look-up" of one or two pieces of evidence he believed were relevant to his case. He concluded by stating: "I request this to prevent an injustice. [¶] I further request relief be given."

At sentencing on February 20, 2024, the court acknowledged it was in receipt of the first two letters dated January 2 and January 11. In pertinent

4

part, the following conversation took place between the court, public defender Michael Roderick, and district attorney Katherine Johnson regarding the letters:

> "MR. RODERICK: Yes, your Honor.
>
> "Although, Mr. Walters would like to address the Court about—he believes that there should be—the ability for a new trial prior to sentencing.
>
> "I was advising him that I think that that is a question for the appeal, but Mr. Walters would like to address the Court.
>
> "THE COURT: All right. Mr. Walters?
>
> "THE DEFENDANT: Yes, your Honor.
>
> "I sent another letter. Speaking with the guy that was giving me a handful of stuff—although, when I requested the information from the officer, the border patrol agent that told me to move the car forward, tried to locate anything—I guess, a Brader request or something—could not locate that.
>
> "It was brought to my knowledge that it's called an AT set (phonetically), or AT-something officer—it should have been in court. And also there's maybe some video evidence of this. And so I was asking for a new trial date.
>
> "THE COURT: All right. And, Mr. Roderick, what is your position?
>
> "MR. RODERICK: Your Honor, I believe that the district attorney and the defense both tried to get information. The cameras I think that it was—you said it was . . .
>
> "MS. JOHNSON: The cameras have been purged. If the defendant is referring to the cameras that are at the Border

Patrol Station, they had been purged by the time any request was made by either of us.

"Regardless, this—neither of these requests constitutes grounds for a new trial at this point.

"THE COURT: I am going to deny the request for a new trial.

"I did also want to address the letter. There was a letter submitted addressing *Strickland*, and I don't know if—I wanted to address that today because I did read it.

"Anything further on that?

"(Counsel conferring with the defendant.)

"MR. RODERICK: We are all set, your Honor. We are ready to proceed.

"THE COURT: Anything further on that?

"MR. RODERICK: No, your Honor.

"THE COURT: All right. I did read the letter submitted by Mr. Walters in this case. Again, it addresses ineffective— this is for counsel—I don't see any grounds for that. It's really—there is a request for an acquit[tal] based on *Strickland*. I didn't see any basis for that. He actually lays no groundwork for that or any facts to support that request. So I'm going to deny his request for an acquittal.

"And again, I understand that you will be appealing this case, Mr. Walters, so then the Court of Appeal can address the work of everyone in this particular case, okay?

"So given that, I'm ready to proceed with the sentencing."

The court sentenced Walters to three years in state prison.

DISCUSSION

Walters contends the trial court erred when it failed to hold a *Marsden* hearing after he sent the four letters to the court in which he complained about his attorney's ineffectiveness after the jury verdict and before sentencing. Walters argues the four letters constituted a *Marsden* motion. The People argue there was no *Marsden* error because Walters's letters did not clearly indicate that he sought to discharge and replace his attorney. Because we find that the four letters did not constitute a *Marsden* motion, we affirm the trial court's judgment.

A judge's decision on whether to grant or deny a *Marsden* motion is subject to review under abuse of discretion. (*Marsden, supra*, 2 Cal.3d at p. 123.) " '[T]he trial court is not required to conduct a *Marsden* hearing on its own motion.' " (*People v. Lucero* (2017) 18 Cal.App.5th 532, 539.) Rather, a trial court has a duty to conduct a *Marsden* hearing when either the defendant personally, or the defendant's counsel, expresses the desire for substitution of counsel. (*People v. Martinez* (2009) 47 Cal.4th 399, 418 (*Martinez*).) Although no formal motion is necessary, there must be at least *some clear indication* by a defendant that they want a substitute attorney. (*People v Richardson* (2009) 171 Cal.App.4th 479, 484.) "The mere fact that there appears to be a difference of opinion between a defendant and his attorney over trial tactics does not place a court under a duty to hold a *Marsden* hearing." (*People v. Lucky* (1988) 45 Cal.3d 259, 281.)

Our Supreme Court has emphasized that courts have no duty to conduct a *Marsden* hearing unless the defendant clearly indicates they are requesting that their counsel be replaced. In *Martinez, supra*, 47 Cal.4th 399, for example, the Supreme Court addressed whether the trial court was required to conduct a *Marsden* hearing after receiving four letters from

7

Martinez's sisters complaining that defense counsel had failed to communicate adequately with Martinez after the initial interview. (*Id.* at pp. 415, 417.) In their first letter, the sisters referred to a denial of the "right to an adequate defense" and asked on behalf of Martinez for a "candid, face-to-face discussion with his attorney." (*Id.* at p. 415.) The first letter noted that the attorney had "excellent recommendations and appears to be supremely qualified and well-respected. However, [they were] extremely frustrated with [the] situation." (*Id.* at pp. 415–416.) The second letter described their unsuccessful efforts to contact the attorney and called for the court to acknowledge or recognize the problem. (*Id.* at p. 416.) The third letter asserted Martinez had faced numerous challenges communicating with his attorney and that Martinez did not wish to change his attorney to avoid further delay of the case. (*Ibid.*) This letter requested for the court to intervene and facilitate some communication between Martinez and the attorney. (*Ibid.*) The fourth letter noted that there was still no communication between the attorney and Martinez. (*Ibid.*)

Our Supreme Court held that "even if we were to view the letters sent by defendant's sister as emanating *from defendant*, those letters do not contain a 'clear indication' from the defendant that he desired substitution of counsel on the ground of counsel's deficiencies." (*Martinez, supra*, 47 Cal.4th at p. 418.) The trial court did not have a duty to conduct an inquiry regarding the defendant's belief about his attorney's incompetence, unless the defendant had made by some *clear indication* that he wished to substitute counsel. (*Ibid.*) The court reasoned that the letters did not imply a request, but simply complained about the lack of communication and a request for the court to improve the attorney-client communication. (*Id.* at p. 418.)

Other Supreme Court cases are to the same effect.  In *People v. Dickey* (2005) 35 Cal.4th 884, the defendant argued that he had attempted to make a motion for the appointment of different counsel for the penalty phase of his death penalty trial and that the court erred when it did not conduct the required *Marsden* hearing.  (*People v. Dickey*, at p. 918.)  The court found the defendant had not moved to request new counsel for the penalty phase but was rather seeking separate counsel "for the purposes of preparing a *motion for a new trial* based on, among other grounds, incompetence of counsel during the guilt phase." (*Ibid.*)  The court reasoned that even though the defendant complained about his attorney's performance at the guilt phase, the defendant "did *not* clearly indicate he wanted substitute counsel appointed for the penalty phase."  (*Id.* at pp. 918–920.)

Similarly, in *People v. Valdez* (2004) 32 Cal.4th 73 (*Valdez*), the defendant argued the trial court erred in denying three separate motions for substitution of counsel.  (*Valdez*, at p. 91.)  In the first *Marsden* hearing, Valdez argued defense counsel had "fail[ed] to (1) communicate with him about the case, (2) speak with numerous witnesses, and (3) file pretrial motions on his behalf[.]" (*Id.* at p. 92.)  The trial court denied his motion, finding counsel was properly handling the case.  (*Ibid.*)  Over Valdez's objections, "[t]he court informed defendant that counsel made the ultimate determination whether or not to file certain motions." (*Ibid.*)  At a second *Marsden* hearing, Valdez made similar complaints.  (*Ibid.*)  The court rejected the motion.  (*Id.* at p. 93.)

Later, Valdez provided a two-page handwritten letter to the court, requesting to be heard outside of the prosecutor's presence.  (*Valdez, supra*, 32 Cal.4th at p. 93.)  In the letter, Valdez indicated he would like to give the court a "written testimony of this whole case." (*Ibid.*)  At a third hearing, the

court asked, " 'Why did you give me the letter?  What did . . . you want the court to do?' " (*Id*. at p. 94.)  The defendant offered no affirmative response when asked if his " 'motion [was] one to relieve [counsel]' " but during the course of the hearing defendant "complained about his defense and argued that additional witnesses should be questioned." (*Id*. at p. 97.)  The court denied the motion.  (*Id*. at p. 95.)

Valdez argued that at the third hearing, the trial court did not satisfy his request for a *Marsden* hearing.  (*Valdez, supra*, 32 Cal.4th at p. 96.)  Rejecting this argument, the Supreme Court noted Valdez's letter merely indicated he wanted to meet with the judge outside of the presence of the prosecutor and that during the hearing, he "neither requested a *Marsden* hearing by name nor did he ask for counsel to be replaced." (*Id*. at p. 97.)  Accordingly, "the court was under no duty to hold a *Marsden* hearing." (*Id*. at p. 96.)

As in each of these cases, Walters's letters contained no clear indication of a request for substitute counsel.  The first letter made a request for the court to enter a judgment of acquittal, but no reference to substitution of counsel.  Walters mentioned "need[ing] effective assistance of counsel" and cited *Strickland*, but the trial court construed this as part of his request for an acquittal, which the court denied.

The second letter simply aired grievances by Walters and informed the court of his belief that proper procedures were not followed.  This letter also contained no reference to substitution of counsel or appointment of new counsel.

The court at sentencing only mentioned receiving the first two letters, and the third and fourth letters do not have a court stamp indicating the date they were received or filed.  It appears that the third and fourth letters were

10

both mailed on February 16, 2024, four days before the sentencing hearing. Thus, the record does not establish that they were received by the court before sentencing.

Even if the court had received these two letters, however, they also failed to clearly request a substitution of counsel. The third letter was mostly devoted to Walters's version of what happened at the border crossing and his belief that the case was a "complete setup on the part of the border patrol agent." Although Walters made references to his attorney not providing enough assistance, the only request he made was for the court to subpoena a border agent involved in the case.

As for the fourth letter, Walters only made a request for the court to "look-up" one or two pieces of evidence he believed were relevant to his case. He concluded the fourth letter by writing, "I further request relief be given." Once again, he never mentioned substitution of counsel or asked to have a new attorney appointed. Although Walters complained about lack of communication from his public defender, the relief he was requesting was for the court to step in and provide the evidence Walters believed was missing.

Finally, Walters had an opportunity to address the court at the beginning of the sentencing hearing, but he said nothing about requesting appointment of a new attorney. His defense counsel began by informing the court that Walters wished to address the court about "a new trial prior to sentencing." After the court gave Walters permission to speak, he mentioned sending "another letter" and explained why he was "asking for a new trial date" based on some evidence that "should have been in court." The court denied Walters's request for a new trial. Walters's argument was therefore directed to obtaining a new trial, not requesting substitute counsel.

11

Because we conclude that Walters made no clear request for appointment of a new attorney, we hold the trial court was not obligated to conduct a *Marsden* hearing.

DISPOSITION

The judgment is affirmed.

BUCHANAN, J.

WE CONCUR:

O'ROURKE, Acting P. J.

DATO, J.